Judge of the United States Court of Appeals for the Fourth Circuit. Good morning, Counsel. Good morning, Your Honor. Mr. Crump, are you ready? I'm ready, Your Honor. If it pleases the Court, Chief Judge Gregory, Justice Diaz, Judge Thacker, Mr. Passon for the government, The facts which the defense would like to highlight are that there was nothing unusual about the behavior of Terrill Witherspoon. On the morning of July 18, 2018, he walked from a motel room down an exterior walkway, down a stairwell, to a parked car. When the police told him to sit down and raise his hands, he immediately cooperated. He sat down and he raised his hand. The district court based its ruling, it made three rulings, in denying the defendant's motion to suppress. The first ruling was that there was an objective, reasonable basis for the police to search Terrill Witherspoon and make the inquiry. The second ruling was that there is a public safety exception that allowed the inquiry in this case. Then the third ruling he made, but which he did not rely on, was that the Fourth Circuit has approved the automatic companion rule, first stated by the Ninth Circuit in the Berry Hill case, and approved by the Fourth Circuit in the Palms case. Witherspoon's argument has consistently been that there is no basis whatsoever to support a search of him based on Terry v. Ohio and that line of cases. The officer said, she acknowledged, there was nothing unusual about Witherspoon's behavior as he walked from the motel room to the parking lot. Terry v. Ohio has never been overturned, even in recent cases, or fairly recent cases, like Arizona v. Johnson. If we did create a per se automatic companion rule in Palms, how do you get around that? There is no way around that. If the court finds that there is an automatic companion rule, that any companion of an arrestee who is present at the time that the arrestee is arrested, and who may assault the officers, there is an automatic right to search that companion. If the Fourth Circuit were to rule that way, if the Fourth Circuit were to say that Palms is not victim, it is good law, the only argument that Witherspoon could make would be a factual argument that he was not in the vicinity of espionage at the time of the arrest. I think Judge Dioz had a question. Thank you, Judge Thacker. If we agree with the government here, do we necessarily need to invoke an automatic companion rule? Or like any other Fourth Amendment case, don't we simply look at the facts that this particular case presents? I understand your point of view that there was nothing unusual about your client's behavior. But of course, I don't know that we necessarily look at his behavior in isolation. We look at the entire set of circumstances that were facing this particular officer at the time of the actions that unfolded. Your client was, in fact, trailing behind someone who the officers were trying to serve an arrest warrant on, someone who they knew was a violent felon who had engaged in a number of violent acts. They were obviously concerned about that. The felon then takes off running, necessitating a chase by a number of the officers involved in this arrest, leaving one officer behind to deal with two individuals who had been in the company of the felon in this case. So I guess my question to you is, what is an officer to do in that circumstance when faced with that situation? Two individuals, a fleeing felon, her colleagues go to chase down the fleeing felon, and she's left with these two individuals who do happen to be, at least appears to be, companions of the felon. So why couldn't the court decide that based on these unique facts, for purposes of officer safety, it was entirely reasonable for this officer to simply detain, not frisk, but detain Mr. Weatherspoon until she could more specifically protect herself and get control of the situation? Your Honor, the defense agrees that the officers had the right to detain Weatherspoon, very briefly. But the right to detain is not also the right to search. And the Supreme Court has made it clear in Ibarro v. Illinois, the Fourth Circuit has made it clear in United States v. Black, there's no reasonable suspicion based on association. There are no objective facts as to Weatherspoon. The officer doesn't even know him. She doesn't know anything about him, doesn't even know his name. And he's just in a public area, just walking to a car, innocently. All the information is asked to Espinoza. And when Espinoza leaves, Weatherspoon is as cooperative as he can be. He's sitting on the ground, he's got his hands raised, he doesn't even know what they say.  I'm sorry. So let me back up to what you just said at the very beginning of your response. You said that you don't contest the ability of the officer to detain Mr. Weatherspoon, but you contest the subsequent search. But the subsequent search was the result of a question by the officer as to whether or not your client was armed. And the district court found that with respect to that statement, that response, that was covered by the public safety exception to Miranda to admit the statement, not the weapon. And once she received that answer that, in fact, Mr. Weatherspoon was armed, at that point she was entitled to obviously frisk and search and retrieve the weapon. So it seems to me that this case rises and falls not on the legality of the search, but on the legality of the detention. And are you conceding that the detention was appropriate? Your Honor, the police had the right to briefly, very briefly detain Weatherspoon and Hemby while they began the arrest of Espinoza. But that detention does not give a right to search Hemby. And let me go back to the question. Mr. Crump, Mr. Crump, Mr. Crump, don't you have the problem here is that having conceded, and I appreciate that you're candid with the court, you're conceding the brief detention. And the problem here is all of this was very brief. This is not a case where they detained him and an hour later he said this. But detention, and then don't you have to say that the question would be inappropriate? You certainly don't say that the officer couldn't say, Tim, do you have a gun? Do you contest that she didn't have a right to do that? No, he didn't have the right to do that, Your Honor. You're saying she could not ask him, do you have a gun? Your Honor. Answer that question, Mr. Crump. Not under circumstances. When you point a gun at someone. Mr. Crump, Mr. Crump, I know it's difficult with technology, but if you wouldn't, you'd wait until I finished the question and then you answer. You're conceding brief detention. You're saying yes or no. You're saying she could not ask the question? That's what I'm saying. Okay, and what's the basis of law do you say that? Your Honor, whenever, when someone points a gun at another individual, in the criminal law, the pointing of a gun is, would satisfy the element of force or intimidation. There's a difference between me going out on the street and asking somebody, do you have any money? And they might think that because of the virus that times are tough and I need some money, you know, for lunch money. On the other hand, if I point a gun at them, directly at them, at their face, and I say the same thing, do you have any money? In Rockingham, North Carolina, that's attempted armed robbery. And this isn't a situation where the officer is just going up to them. And it's not the squat team, guns aren't loaded, and if you just ask, do any of you have a gun? That's a question. But when you point a gun at someone and ask the question, there's nothing consensual about responding to someone with a loaded gun in their face. So you're saying, so you think it's a Miranda problem? No, I think the core of this case, it is a Miranda problem, but the core of this case is that when that officer pointed a gun at Witherspoon and demanded who had a gun, that was a search. That was the equivalent of a pat-down frisk. No, don't just say that's the equivalent of a seizure. He was clearly seized at that time, correct? Would you repeat the question? He was seized at that time. It's not just a detention, but he's actually clearly seized. He's seized. When they asked the question, he's seized. Yeah, but the search came about by the response to the question. Did his rights attach to be warned upon being seized, first, that he had a right not to answer that question? He had that right. He had that right. But the question was the search. Again, when you point a gun at someone, that radically changes the dynamic. Pointing a gun at somebody is a search. Okay. Go ahead. Your Honor, the district court judge also said that this search was justified by New York v. Quarles, that there's a public safety exception. The public safety exception applies to the Fifth Amendment, not to the Fourth Amendment search. If I could, I'd like to go back to Palms. The defense's argument is that in the Palms case, the reason the Fourth Circuit first justified the search of Palms under Terry v. Ohio, that there was reasonable suspicion. They later said that they approved the rule announced in Berryhill as the automatic companion. That rule of automatic companion search is inconsistent with both Supreme Court law and Fourth Circuit law. That the Supreme Court said in a bearer that a person's mere propinquity to another independently suspected criminal activity does not, without more, give rise to probable cause to search that person. And then the Fourth Circuit said in United States v. Black, that there's no reasonable suspicion based on association. Thank you, and my time is up for opening argument. When you followed up, I wrote Black, so I know the case very well. The difference is that there was no companionship at all. It was solely association. Man had no connection at all just because he was standing with other people and they'd search him. That's totally different. I mean, this case is different. That's not distinguishing Palms. Palms said that he followed the other circuit, and that was not dicta, but equal reasons for his decision. And so it's the companionship that drove it in Palms, as it is here. And we'll get into it when your colleague comes up, but go ahead. You don't need to respond unless you want. All right. Mr. Poulson. Thank you, Your Honor. Good morning, and may it please the court. Chief Justice Gregory, Judge Diaz, Judge Thacker. In this case, we have an interaction with the police that involves two components, as the court has already recognized, an initial brief detention and then a follow-up search or a frisk for weapons. The government would ask this court to find that that initial detention, in doing so, that offers that officers acted reasonably in briefly detaining Mr. Weatherspoon for their safety during the minutes that it took to effect the arrest of his companion, Mr. Espinoza. Once Mr. Weatherspoon has made a statement then to the officers that he's armed, the government is asking the court to find that that provided justification for them to go further and frisk or search him to retrieve that weapon. And when we talk about the reasonableness of the initial detention, we're talking about the Fourth Amendment, which has the overarching theme that officers' actions must be reasonable. And what the officers are doing in this initial detention is essentially securing the scene, telling the people nearby to stop, sit, put your hands in the air, or in other equations or other circumstances to keep your hands where I can see them, hold still for a few minutes while we do what we need to do. It's analogous, I think, to circumstances that we see officers doing in car stops and when they execute search warrants. I'm surprised you started your argument there. I think that's pretty dangerous for you. As I told you, I wrote black in terms of that's our Fourth Circuit precedent. You really need to start in terms of what's your evidence of the start of the companionship. Doesn't that start with the surveillance? Yes, Your Honor. So in this case, there is, I would argue, evidence that links Mr. Weatherspoon and Mr. Espinoza. And it's not extensive and it's not developed, as you would expect, because it occurs in the moments before the officers are involved here. But they do, Mr. Weatherspoon is seen leaving the hotel room with Mr. Espinoza, and they're seen walking to the parking lot, down the breezeway into the parking lot together. How long had they surveilled him being in the hotel together before they came up? Your Honor, it would not have been long enough to have seen them any other time. The record suggests that other agents had gone to the front desk to determine the room that Mr. Espinoza might be in, and that while that was going on, that they observed this group coming out of the room together and going to the parking lot. And, Your Honor, I would suggest that the companionship here does provide a link between... Yes, Your Honor. So does the government argue then that Palms did create a per se automatic companion rule? Your Honor, I do believe there is a judicially created rule here, and the district court recognized it, and that it was the applicable rule. However, it's important to note that the district court did not base its decision on the automatic rule, and this court does not have to endorse that rule in order to rule for the government in this case. What this court could do is simply find that the officers acted reasonably under the Fourth Amendment in briefly detaining everyone, which opposing counsel seems to agree was allowed, and that once that is done, Mr. Espinoza's response to the question of who's got a gun provides them independent, reasonable suspicion under Terry v. Haya that he is armed and dangerous and gives them the right to frisk and search him to retrieve that gun. But isn't that more problematic for you in terms of... It seemed to me the court believed that the automatic rule did apply. It said that, it just didn't use that, correct? Yes, Your Honor, it recognized that it was bound by this court's decision, so that was the applicable rule. But here's the problem. If you go strictly that this is under Terry and reason to do so, this was a little different. Didn't they just run up and tackle one of the people? Your Honor, they ran up in an attempt to get Mr. Espinoza. When he fled, the record suggests that one of the officers, as he passed by Mr. Weatherspoon and Mr. Hembury, pushed Mr. Hembury to the ground as they were yelling, you know, get on the ground, get on the ground, stop, police. Wasn't the weapon drawn immediately? Absolutely, Your Honor. The officers came into the situation... But see, that's the danger. If you go without companionship, look at the scenario. It's just people always, you can't look at how the scenario played out. They really did have a weapon. They really were, whatever. That means that if you take too far, if someone, you have an arrest warrant for them, and you see somebody with them, and they run, and others don't run, you can put a weapon right in their face. Right in their face. And that's the difference between sometimes life and death, because if they had flinched the wrong way, they could have been shot. Isn't it because of the companionship aspect that makes this different? Because this was a, I'm not saying the officer was wrong in a sense, but necessarily. But here, you have to be careful. What's the limiting aspect? Are you saying that, for example, you don't know whether there's an arrest warrant for somebody who's a friend of yours and walking down the street with you? And all of a sudden, the police can come without even asking you a question. They go, they run, you don't. And then you immediately put a gun in their face and say, I'll kill you if you move. Isn't that a dangerous type scenario if you had no connection with them at all? And you come very close to what Black was talking about, association. It's because this is distinguished by the companionship, isn't it? Because otherwise, what's the limiting aspect of it? Well, Your Honor, as in all Fourth Amendment things, reasonableness under the totality of the circumstances is going to rule. In this case, and any stop is going to have to be reasonable and justified at its inception and justified in its scope and duration and how it's carried out. In this case, officers had reason and facts they could point to to suggest that there was danger in the execution of this warrant, specifically all that they knew about Mr. Espinoza. And I would argue that that justified the use and the brandishing of firearms for their safety in going into the situation. If this court were to adopt and endorse the automatic companion rule and rely upon it in supporting this case, then that would justify the stop as well as the search. But if the court does, this court does what the district court did, and what I'm asking you to do here today and simply say that the dangerous circumstances and the factors that they knew justified a brief detention, a securing of the scene, just as when an officer stops a car, that he can secure all of the passengers, even if he's only stopping the car for a tag violation. And just as if he has no information that the passengers are any danger whatsoever, then an officer can secure everyone and have them hold still and be detained for a moment while they go about their legitimate business. Mr. Paulson, let me ask you this question. When a police officer has a warrant for an arrest of someone and they're with someone, isn't that always a danger? There is always the concern that the person who is a companion of the person— It's always a danger, correct? Yes, Your Honor. So then you're saying that in all those circumstances they can pull their gun out and point the gun in their face, right? Well, Your Honor, I think that they can always detain everyone. Now, how that detention looks, I think, is going to have to be driven by the facts and circumstances of the case. I'm sure there are limits to how the police can go about detaining individuals in every case, whether it be because they have reasonable suspicion. I'm talking about this case. They're walking down the street with someone. That's all they did. Yes, Your Honor. And I think that in this case, the police's actions in using a gun and pointing a gun to effect that detention are entirely reasonable because of what they knew about Mr. Espinoza going in. They know he's a gang member. Yes, Judge. Now, go ahead and finish your answer. Thank you, Your Honor. Knowing that he's a gang member, knowing that he has a history of carrying and discharging firearms in the past, and knowing that he's a suspect in these two recent incidents, the shooting that involved multiple people as well as the burglary that involved criminal accomplices that the police knew existed but didn't know anything about. All right. What does that have to do with the innocent person that's with him? It explains why the officers, when executing this warrant against Mr. Espinoza, would have come into the situation withdrawn guns in order to effect that detention and arrest. I just don't see the limiting factor because the person you have the search warrant for runs. I don't think the officers just run after all of them. Well, Your Honor, because— And then run after them. Your Honor, respectfully, I think that would put the officers in an untenable situation to knowing that these two individuals are with Mr. Espinoza and chasing past them, turning their backs to these individuals, and putting themselves in a situation where they have no control over people that have a connection to someone that they're trying to arrest. And because that puts them in an untenable situation, I believe, Your Honor, that it does justify a securing of that immediate scene, a brief detention, as Mr. Crump indicated, should be allowed. And then further in this case, you have— Judge Diaz has a question. You answered part of my question. That is, you seem to be suggesting that each case needs to be taken on its own merits and facts. What makes this case a little bit odd is that, although they were dealing with someone who they allege to have been a violent felon, they were serving a warrant for driving while impaired, which seems a bit odd. It would seem to me that if an example where they're serving a warrant for driving while impaired and there's a companion in a different case, but the person that they're serving the warrant on has no history of violence, then the officers might very well act differently in that case. And we might have a different result depending on the circumstances, don't you think? Absolutely, Your Honor. I would still argue that there would be reason for officers to take some control of that scene, but maybe in that circumstance it looks more like, you know, holding your hand out and asking everyone to stay still while they serve the arrest warrant and less like everyone running in with guns. Certainly, as you noted, you know, this is a totality of the circumstances case where reasonableness is the ultimate standard. And just to follow up, the problem I have with this case is if we were to suppress the evidence in this case and say that the officers acted unreasonably, you know, one of the core purposes of doing that is to deter officers from future alleged misconduct. But I struggle to see what the deterrence value would be in suppressing evidence in this case given the situation in which these officers found themselves and the split-second decisions that they had to make in order to protect themselves in the circumstances. Absolutely, Your Honor. At the end of the day, you know, as you noted and having seen the video that's been provided, the court recognizes that this was a very dynamic, fluid situation. The district court recognized that things happened very quickly. This was a dangerous situation. And although we do want to protect the rights of every individual, even the people who are with Mr. Espinoza, we also want to make sure that a brief limited detention would be allowed in order to provide the safety that those officers need to do their duty, what we're asking them to do. Your Honor, I think that... The problem we have is that it seems like the government, you want it all. It's almost as if you sort of deliberately don't want the court to rule on the companion or the companion to somewhat almost erode black. Because Judge Diaz in his question, I don't say we don't make points, we just make observations and questions. But when you think about this would be serving a warrant for driving under the influence. Because that's dangerous, you can point your gun at the two people with them. Because that's what you can do. This is not just this case, it's all the other cases. A DUI warrant, you can come out, put your guns on the other two people. You know, they haven't done anything. This is not a case where they were flailing around trying to defend him. Almost knock them down and then say, look, you move, I'll kill you. That's the powder keg problem we have in this country in terms of it's very important case because this would be you serving a nonviolent warrant for arrest, DUI. And you can come up and put a gun in someone's face and say, I'll kill you if you move. And that's the basis for it. That's what the problem, people read it, you can do it then. You certainly can do it for a misdemeanor shot lifting if you can do it for that. And the difference is that because it's the companionship aspect of it and what they knew about him before and the gang activity and deal with him. That's the limiting principle. But if you say, no, this is nothing but a normal terrorist act, and you come and you put a gun in someone's face and say, do you have a gun? That's what I think Mr. Crubb is talking about. Once I put a gun in your face, it's not voluntary to that at all. And isn't it because of that? That's what I'm afraid. We don't have to sort of deny it. It's not denying the motion to suppress it as it is getting it right. Why is it not? Why is it denied? It's because of the circumstances of it. If we do that, see, this fact would be because of the companionship, but not because of some open all thing. Every case, you know, the officer can do that, even when it's a DUI. Don't you think that's dangerous when you can say you can do that, you can come in? I mean, you have friends, I know, of course, hypothetically, and you don't know whether somebody wants them for a DUI, and you're standing there and the police come and say, police, they run off, and the police stays there and puts a gun in your face and say, you move, I'm going to kill you. You think that's what's allowed in cases? Why don't you want us to rule that? Why are you eschewing the automatic companion? Your Honor, this court noted in Williams that in 2000, in which it applied this automatic companion rule, that there are ultimately going to be circumstances where a blind application of a per se rule, there are going to be scenarios where that becomes unreasonable and unjustified. But this rule that the court has created does encapsulate and recognize the balance, and that balance is that on hold when you're dealing with these circumstances, it is reasonable for officers where they have an individual they're serving an arrest warrant on, they have a known companion who is not just a companion, not just someone who's there, but a companion, and someone who is in the immediate vicinity and capable of causing them harm, that that balance is going to fall down on the side of allowing the search and the frisk, because there's reason to believe that they're in danger. Then, of course, as the court just noted, there are going to be circumstances at the far edges of any judicially created rule, and circumstances where that rule becomes pushed to the point where it may break and things become unreasonable, and certainly that's true. In this case, however, we're within the heartland of circumstances that justify this type of brief detention and then frisk, both because of what the officers knew about Mr. Espinoza going in, the extensive information they had about how dangerous he was, how he was known to commit crimes with associates, and also having seen Mr. Weatherspoon not just being in the same room when they came in, but coming out of a hotel room together with him, walking with him together, and heading toward that car in the parking lot that they're all going to together as one. So because you have that extra information here, that safety, the safety concerns, it puts not only independent justification for the officers who have done what they did, because they needed to secure the scene and because Mr. Espinoza told them that he was armed, but it also puts this case kind of in the heartland of the cases that justify the creation of this rule in the first place, which is the balance that says we need to protect officers, we need to give them the tools that they have, not to run rampant over people's rights, and not just to walk up to someone and feel unsafe in that case and have a justification for search, but when they're there executing an arrest warrant, a judge has signed off on a warrant and said there's probable cause to arrest this person, and the officers are doing their duty to have to be there and be in this circumstance. This court has provided them tools and the limited intrusions that are necessary to do their job safely, and we'd ask the court to likewise affirm the decision of the district court and rule that the officers did act reasonably in this case, both in the initial detention and then after Mr. Espinoza said he was armed in retrieving that weapon. Unless there are further questions, that's all I have. Thank you. Thank you, counsel. Mr. Crump? Thank you, Your Honor. Your Honor, again, Mr. Witherspoon would emphasize that there's a difference between the right to detain and the right to search, and in the case of Michigan v. Sumners, I think 1981, the state of Michigan asked the Supreme Court to not only rule that police have the right to detain an opponent when they are serving a search warrant, but they also asked the Supreme Court to rule that there's a right to search that person detained. The Supreme Court would not rule that. They wouldn't go that far. Again, going back to Arizona v. Johnson, absolutely, if police were to stop a motor vehicle for a traffic stop, police can ask all the occupants to get out of the vehicle. That's just like in Witherspoon. There's a right to briefly detain, but there's no further right to search them unless there's reasonable suspicion that person is armed and dangerous. Your Honor, I'm ready to conclude. I want to... Judge Diaz has a question, Mr. Crump. Yes, Your Honor. So what you just said, I guess, prompts this question. The search in this case was a result of the response to the question, are you armed, right? So the issue is, are you taking issue with the asking of the question? Because it seems to me that once Mr. Witherspoon responds, yes, I have a firearm at that point, there is ample suspicion for the officer to frisk and search Mr. Witherspoon. So I'm having trouble following your argument. Your Honor, if I may, one case... I'm paraphrasing one case. It said it's axiomatic that you cannot justify an arrest as incident to a search. In this case, you cannot justify a seizure of a gun as incident to an unconstitutional search. And our argument's consistently been that when the S.Q.U.A.T. team gets there, and you got, as far as they tell, two innocent people, and they point a gun in their face, demand who's got a gun, that's an unconstitutional search. The only way it can be justified would be an automatic companion rule. It's in POMS, and we argue that the Supreme Court has never held that. It's inconsistent with Supreme Court law. That didn't work. Are you saying that the question itself, that the question, do you have a gun, was an unreasonable search? Is that what you're saying? Your Honor, that is my answer on the unique facts of this case, that when the question is asked, the officer has a gun loaded, pointed at his face. That's just not a question. It's more than a question. Your Honor, I'm going to conclude with two statements. One, I think, is from the Chief Judge Gregory Black. In that case, he said that that case represented a slow erosion of the Fourth Amendment. We contend that if the court would uphold this case based on POMS, or based on that there were objective facts, that this is a slow erosion of the Fourth Amendment, that anybody could be searched, almost anybody. All you've got to do is just be with somebody at Walmart when they shoplift, or at a nightclub, or at a poolroom shooting pool. And I'm going to say this, this is a dissenting opinion statement by Justice Kennedy, and he said, this was in Maryland v. Wilson, liberty comes not from officials by grace, but from the Constitution by right. Thank you. Thank you, Counsel. Mr. Crump, we note that you were caught upon it. I just want to especially thank you so much for your service. Our court depends on lawyers like yourself who take those cases and represent and advocate, and we really appreciate it. Thank you. And likewise, Mr. Poussaint, your able representation of the United States. We can't come down and greet you as we would love to do so, but know that we heartily welcome you. Thank you so much for your argument. We hope that you will be safe and stay well. Thank you, Counsel. Thank you, Your Honors. Thank you, Judge Diaz. Thank you, Judge Thacker. Thank you. The court stands adjourned. Signing back out to the United States and its own report.
judges: Roger L. Gregory, Albert Diaz, Stephanie D. Thacker